# EXHIBIT B

09/07/2006 13:48 FAX  515 365 3043        MARSH AFFINITY GROUP                          ☎ 002/047

St. Paul Travelers 1ˢᵗ Choiceˢᴹ for Agents and Brokers.

**LIFE AND HEALTH INSURANCE AGENTS AND BROKERS
PROFESSIONAL LIABILITY DECLARATIONS PAGE**



---

**POLICY NUMBER:** *560784370*                    **ISSUE DATE:** *11/17/2005*

## THIS IS A CLAIMS-MADE POLICY.  PLEASE READ IT CAREFULLY.

### "Defense Costs" Are Included Within The Limits of Liability – "Defense Costs" Will Reduce The Available Limits of Liability

**INSURING COMPANY:** St. Paul Guardian Insurance Company, St. Paul, Minnesota

| | | |
|---|---|---|
| 1. | **NAMED INSURED:** | *Executive Fidelity LTD / The ASO Company Inc / Strategic Mgt Solutions Inc.* |
| 2. | **PRINCIPAL ADDRESS:** | *375 West Maple Avenue* |
| | | *Roselle IL 60172* |
| 3. | **POLICY PERIOD:** | From: *11/12/2005*   To:   *11/12/2006* |
| | | Inception              Expiration |
| | | (12:01 A.M. Standard Time at the Principal Address Stated Above) |
| 4. | **RETROACTIVE DATE:** | *Full Prior Acts* |
| 5. | **LIMITS OF LIABILITY:** | *$ 1,000,000*   **EACH CLAIM** |
| | | *$ 3,000,000*   **POLICY AGGREGATE** |
| 6. | **DEDUCTIBLE** | *$ 10,000*   **EACH CLAIM** |

7.  **PROFESSIONAL SERVICES:**        **PREMIUM:**

Life & Health Insurance
    Agents/Brokers        *$ 6,009.00*

Property & Casualty
    Agents/Brokers        *$ 0.00*

Coverage by
    Endorsement          *$ 0.00*
                 *$ 0.00*
                 $
                 $
    Total Policy Premium   *$ 6,009.00*

8.  **NOTICE REQUIRED TO BE GIVEN TO THE INSURER SHALL BE ADDRESS TO:**
St. Paul Guardian Insurance Company, One Tower Square, 4SB, Hartford, CT  06183-3004.
Telephone Number: 1-800-328-2189

9.  **FORM AND ENDORSEMENT NUMBERS ATTACHING TO THIS POLICY AT ISSUANCE:**

See attached Policy Form List.

IA002 Ed. 11-04                    © 2004 The St. Paul Travelers Companies, Inc.                    Page 1 of 2
Printed in U.S.A.                          All Rights Reserved

09/07/2008 13:48 FAX   515 385 3043          MARSH AFFINITY GROUP                                  ☒ 003/047

This policy consists of the Life and Health Insurance Agents and Brokers Professional Liability Declarations, Coverage Form, and Endorsements listed above (or attached after inception).

**NAME AND ADDRESS OF PRODUCER:**

Marsh Affinity Group Services
1776 West Lakes Parkway
West Des Moines, IA 50398

*Steven E Liston*

_____
Authorized Representative

In Witness Whereof, the Insurer has caused this policy to be signed by its President and Secretary and countersigned on the Declarations Page by a duly authorized agent of the Insurer.

*Jh A. MacColl*
President

*Secretary*

IA002  Ed. 11-04
Printed in U.S.A.

© 2004 The St. Paul Travelers Companies, Inc.
All Rights Reserved

Page 2 of 2

## POLICY FORM LIST

TheStPaul

Here's a list of all forms included in your policy, on the date shown below. These forms are listed in the same order as they appear in your policy.

| Title | Form Number | Edition Date |
|---|---|---|
| Life and Health Insurance Agents and Brokers Professional Liability Declarations | IA002 | 11-04 |
| Policy Form List | 40705 | 05-84 |
| Life and Health Insurance Agents and Brokers Professional Liability Policy | IA006 | 09-04 |
| Reporting A Claim or Circumstance Which May Give Rise To A Claim | IA016 | 09-04 |
| Additional Insured-Employee or Independent Contractor | IA010 | 09-04 |
| Cobra Exclusion | IA025 | 09-04 |
| Illinois Amendatory Endorsement | IA032 | 11-04 |
| Illinois Cancellation/Nonrenewal Endorsement | IA053 | 09-04 |
| TRIA Rejection of our Offer | D0161 | 11-02 |
| TRIA Endorsement | IA088 | 10-04 |
| Other Than WC Compensation Notice | N0044 | 08-05 |

| Name of Insured | Policy Number 560JB4370 | Effective Date 11/12/2005 |
|---|---|---|
| Executive Fidelity Ltd / The ASO Company | | |
| Inc / Strategic Mgt Solutions Inc. | Processing Date 11/17/2005 | |

40705 Ed. 5-84 Printed in U.S.A.                    Form List
©St.Paul Fire and Marine Insurance Co. 1995     Page 1

08/07/2006 13:48 FAX  515 365 3043        MARSH AFFINITY GROUP                    ☒005/047

LIFE AND HEALTH INSURANCE AGENTS OR BROKERS PROFESSIONAL LIABILITY

## REPORTING A "CLAIM" OR CIRCUMSTANCES WHICH MAY GIVE RISE TO A "CLAIM"

This endorsement modifies insurance provided under the following:

LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY INSURANCE COVERAGE FORM

St. Paul Travelers has a dedicated claims staff to handle your Life and Health Insurance Agents and Brokers Professional Liability claims. In the event of a "claim" or circumstances, which may give rise to a "claim", please immediately notify us in writing, at the address or phone number listed below.

When reporting your "claim", please provide your name, address, policy number, telephone number and the date you first became aware of the "claim" or circumstances.

For more information on claim reporting, please refer to SECTION IV – SPECIAL PROVISIONS, 3. LOSS PROVISIONS and 4. SPECIAL REPORTING CLAUSE, of your Life and Health Insurance Agents and Brokers Professional Liability Insurance Coverage Form.

Your St. Paul Travelers Insurance Agents and Brokers Professional Liability claims reporting office is as follows:

Attn: Professional Claims Department
St. Paul Travelers Insurance Company
385 Washington Street
Saint Paul, Minnesota 55102
Telephone Number – (800) 787-2851
Fax Number – (651) 310-3657

IA016 Ed. 9-04          © 2004 The St. Paul Travelers Companies, Inc,          Page 1 of 1
Printed in U.S.A.                All Rights Reserved

LIFE AND HEALTH INSURANCE AGENTS OR BROKERS PROFESSIONAL LIABILITY

POLICY NUMBER: 560JB4370                              ISSUE DATE: 11/17/2005

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED - EMPLOYEE OR INDEPENDENT CONTRACTOR

This endorsement modifies insurance provided under the following:

LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY INSURANCE
COVERAGE FORM

In consideration of the premium paid, it is hereby understood and agreed that the following are added as additional INSURED(S), but only with regard to Professional Services rendered on behalf of or at the direction of the NAMED INSURED:

1.  John Harter
2.  Joe Charbonneau

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

IA010 Ed. 9-04                    ⁿ 2004 The St. Paul Travelers Companies, Inc.              Page 1 of 1
Printed in U.S.A.                              All Rights Reserved

09/07/2006 13:49 FAX  515 365 3043        MARSH AFFINITY GROUP                                    ☑007/047

## LIFE AND HEALTH INSURANCE AGENTS OR BROKERS PROFESSIONAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COBRA EXCLUSION

This endorsement modifies insurance provided under the following:
LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY
INSURANCE COVERAGE FORM

In consideration of the premium paid, this
policy does not apply to any CLAIM(s)
arising out of the rendering or failure to
render any acts, errors or omissions of
services involving COBRA administration
and Third Party Administration.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

IA025 Ed. 8-04           © 2004 The St. Paul Travelers Companies, Inc.         Page 1 of 1
Printed in U.S.A.                     All Rights Reserved

08/07/2006 13:49 FAX  515 366 3043    MARSH AFFINITY GROUP    ☒ 008/047

## LIFE AND HEALTH INSURANCE AGENTS OR BROKERS PROFESSIONAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY
INSURANCE COVERAGE FORM

Section III. EXCLUSIONS, Subsection 11. shall be deleted in entirety and replaced with the following:

11. to any CLAIM for nonpecuniary relief, or fines, penalties, or punitive, exemplary or multiplied damages,

However, the Company shall retain only the duty to defend any CLAIM for punitive or exemplary damages.

Section IV. SPECIAL PROVISIONS, Subsection 5. OPTIONAL EXTENDED REPORTING PERIOD, shall be deleted in its entirety and replaced with the following:

5. OPTIONAL EXTENDED REPORTING PERIOD

If the Company or the NAMED INSURED cancels or refuses to renew this policy for any reason, the NAMED INSURED has the right to purchase an extended reporting period, effective upon the date of cancellation or nonrenewal and running for either twelve (12) months, twenty-four (24) months or thirty-six (36) months to cover CLAIMS first made against the INSURED during the extended reporting period, but only for WRONGFUL ACTS committed during or prior to the POLICY PERIOD and otherwise covered by the policy,

To exercise this right the Company must receive written notice within 30 days of the effective date of cancellation or nonrenewal along with payment of an additional premium of 100% of the total annual premium for the 12-month extended reporting

period, an additional premium of 150% of the total annual premium for the 24-month extended reporting period or 185% of the total annual premium for the 36-month extended reporting period.

In the event of cancellation or nonrenewal by the Company for the nonpayment of premium or other monies due to the Company, any monies received by the Company as payment for the Optional Extended Reporting Period shall be first applied to such premium owing for the Policy. The Optional Extended Reporting Period will not take effect until the premium owing for the Policy is paid in full and unless the premium owing for the Optional Extended Reporting Period is paid promptly when due.

The Limit of Liability of the policy at the time of cancellation or nonrenewal shall not be increased for any optional extended reporting period,

Section V. GENERAL CONDITIONS, Subsection 4. ARBITRATION, is deleted in its entirety and replaced with the following:

4. ARBITRATION

Any dispute between the INSURED and the Company concerning the terms and conditions of this policy may be resolved by binding arbitration, upon mutual agreement of both parties, in accordance with the rules then in effect of the American Arbitration Association. The arbitration shall be held in the state indicated on the Declarations as the principal address of the INSURED. The INSURED and the

IA032 Ed. 9-04
Printed in U.S.A.

© 2004 The St. Paul Travelers Companies, Inc.
All Rights Reserved

Page 1 of 2

08/07/2006 18:48 FAX  515 365 3043      MARSH AFFINITY GROUP                    ☑008/047

## LIFE AND HEALTH INSURANCE AGENTS OR BROKERS PROFESSIONAL LIABILITY

Company shall each bear their own costs of the arbitration and shall share equally the costs of the arbitrator.

In the event that the INSURED and the Company do not reach an agreement to submit the dispute to arbitration, either party shall have the right to commence a judicial proceeding.

Section V. GENERAL CONDITIONS, Subsection 8. OTHER INSURANCE, is deleted in its entirety and replaced with the following:

8.  OTHER INSURANCE

Such insurance as provided by this policy shall apply in proportion to any other valid and collectible insurance available to the INSURED,

as well as any indemnification which the INSURED has actually received from any customer or client. With respect to customer or client indemnification which is not paid by such indemnitor, this policy shall pay such damages as are otherwise covered under this policy, however, the INSURED agrees, as a condition for such payment, to provide whatever assistance and cooperation is required by the Company to enforce the Company's rights as subrogee.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

IA032 Ed. 9-04
Printed in U.S.A.

© 2004 The St. Paul Travelers Companies, Inc.
All Rights Reserved

Page 2 of 2

09/07/2006 13:48 FAX  515 365 3043     MARSH AFFINITY GROUP                                    ☑010/047

## LIFE AND HEALTH INSURANCE AGENTS OR BROKERS PROFESSIONAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ILLINOIS CANCELLATION/NONRENEWAL ENDORSEMENT

This endorsement modifies insurance provided under the following:

LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY
INSURANCE COVERAGE FORM

Whenever used in this endorsement: 1) "we", "us", "our", and "insurer" mean the insurance company which issued this policy; and 2) "you", "your", "named insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

CANCELLATION AND NONRENEWAL

**A.** The cancellation condition of this policy is replaced by the following:

CANCELLATION

1. The Named Insured may cancel this policy by mailing to the insurer advance written notice of cancellation.

2. If this policy has been in effect for sixty (60) days or less, the insurer may cancel this policy by mailing to the Named Insured written notice of cancellation at least:

   a. Ten (10) days before the effective date of cancellation if the insurer cancels for nonpayment of premium; or

   b. Thirty (30) days before the effective date of cancellation if the insurer cancels for any other reason.

3. If this policy has been in effect for more than sixty (60) days the insurer may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

c. The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

d. The risk originally accepted has measurably increased;

e. Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to the insurer for all or a substantial part of the underlying risk insured; or

f. A determination by the Director that the continuation of the policy could place the insurer in violation of the insurance laws of this State.

If the insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation. When cancellation is for nonpayment of premium, the insurer will mail notice at least ten (10) days before the effective date of cancellation.

4. The insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the insurer.

IA055 Ed. 9-04          © 2004 The St. Paul Travelers Companies, Inc.                    Page 1 of 2
Printed in U.S.A.                  All Rights Reserved

08/07/2006 13:49 FAX  515 365 3043    MARSH AFFINITY GROUP    011/047

## LIFE AND HEALTH INSURANCE AGENTS OR BROKERS PROFESSIONAL LIABILITY

5. Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6. If this policy is cancelled, the insurer will send the Named Insured any premium refund due. If the insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the insurer has not made or offered a refund.

7. Proof of mailing will be sufficient proof of notice.

8. The following is added:

**NONRENEWAL**

1. If the insurer decides not to renew this policy, the insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the insurer at least sixty (60) days before the expiration date of the policy. A copy of the notice will also be sent to:

a. The broker, if known to the insurer, or the agent of record; and

b. The last known mortgagee or lienholder named in the policy at the last mailing address known to the insurer.

This paragraph does not apply if the insurer has manifested a willingness to renew directly to the Named Insured.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

IA083 Ed. 9-04
Printed in U.S.A.

© 2004 The St. Paul Travelers Companies, Inc,
All Rights Reserved

Page 2 of 2

09/01/2006 13:49 FAX  515 365 3043      MARSH AFFINITY GROUP                      ☑012/047


**ST PAUL TRAVELERS**

### DISCLOSURE NOTICE
### TERRORISM RISK INSURANCE ACT OF 2002
### REJECTION OF OUR OFFER OF COVERAGE

You did not accept our offer of coverage for certified acts of terrorism, as defined in and certified under the Terrorism Risk Insurance Act of 2002. Therefore, this policy does not provide such coverage. This policy contains one or more exclusions that apply to certified acts of terrorism.

If you were not made aware of our offer of coverage for certified acts of terrorism, or believe that this notice was included in this policy in error, please notify your agent or broker immediately.

Name of Insured:  Executive Fidelity LTD / The ASO Company

Policy Number:    560J84370

Effective Date:    11/12/2005

Processing Date:   11/17/2005

D0101 Ed. 11-02 Printed in U.S.A.                    -1-

09/07/2006 13:49 FAX  515 365 3043        MARSH AFFINITY GROUP                    ☑ 013/047

LIFE AND HEALTH INSURANCE AGENTS OR BROKERS PROFESSIONAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TERRORISM RISK INSURANCE ACT OF 2002
# CERTIFIED ACTS OF TERRORISM EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY INSURANCE COVERAGE FORM

In consideration of the premium paid, it is hereby understood and agreed that the policy is amended as follows:

1. **SECTION II – DEFINITIONS,** is amended to add the following definition:

   **CERTIFIED ACT OF TERRORISM** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 includes the following criteria for such an act of terrorism:

   (a) the act resulted in aggregate losses in excess of $5 million; and

   (b) the act is a violent act, or an act that is dangerous to human life, property or infrastructure, and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States of America, including its territories and possessions and Puerto Rico, or to influence the policy or effect the conduct of the United States Government by coercion.

2. **SECTION III – EXCLUSIONS,** is amended to add the following exclusion:

   This policy does not apply to any **CLAIM** based upon, arising out of, due to or involving, directly or indirectly, or alleging any **CERTIFIED ACT OF TERRORISM.**

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

IA089 Ed. 10-04          ● 2004 The St. Paul Travelers Companies, Inc.          Page 1 of 1
Printed in U.S.A.                      All Rights Reserved

PAGE  15/19                  GULF INSURANCE                  8008429326      03:35  09/28/2006

09/07/2006 13:49 FAX  515 365 3043        MARSH AFFINITY GROUP                              ☎014/047



## IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION

For information about how St. Paul Travelers compensates independent agents and brokers, please visit www.stpaultravelers.com, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183; Fax (860) 954-5987.

ND044 Rev. 8-05
© 2005 The St. Paul Travelers Companies, Inc. All Rights Reserved                    Page 1 of 1

**LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY**

**St. Paul Travelers 1st Choice℠ for Agents and Brokers**

# LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY INSURANCE COVERAGE FORM

### THIS IS A CLAIMS MADE POLICY--READ CAREFULLY

THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE **CLAIMS** THAT ARE FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD**. DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY PROVIDED. PLEASE REVIEW THIS POLICY CAREFULLY WITH YOUR INSURANCE BROKER OR ADVISOR.

In consideration of the premium paid, in reliance upon the statements in the application, subject to the limits of liability stated in the Declarations and all terms, conditions and exclusions of the policy, the Company agrees as follows:

## I. INSURING AGREEMENT

The Company shall pay on behalf of the **INSURED** all sums which the **INSURED** shall become legally obligated to pay as damages resulting from a **CLAIM** or **CLAIMS** first made against the **INSURED** during the **POLICY PERIOD**, and reported in writing to the Company during the **POLICY PERIOD** or within sixty (60) days thereafter, by reason of any **WRONGFUL ACT** of an **INSURED**, but only if the **INSURED**, prior to the **POLICY PERIOD**, had no knowledge of such **WRONGFUL ACT**, and further provided that such **WRONGFUL ACT** occurs subsequent to the retroactive date, if any, stated in the Declarations.

### DEFENSE COSTS (INCLUDED IN THE LIMIT OF LIABILITY)

With respect to any **CLAIM** based upon a **WRONGFUL ACT** for which insurance is afforded by this policy, the Company shall, as part of and subject to the Limits of Liability:

  (a) have the right and duty to defend any **CLAIM** brought against the **INSURED**, even if the **CLAIM** is groundless, false or fraudulent;

  (b) make any investigation and conduct any negotiation which the Company feels is appropriate; and

  (c) enter into settlement of any **CLAIM** as the Company deems expedient, with the written consent of the **INSURED**.

If the **INSURED** refuses to consent to any settlement recommended by the Company,

and shall elect to contest the **CLAIM** or continue any legal proceedings in connection with such **CLAIM**, the Company's liability for the **CLAIM** shall not exceed the amount for which the **CLAIM** could have been settled, plus **DEFENSE COSTS** incurred by the Company and the **INSURED** up to the date of the refusal to settle.

The Company's payment of the Limit of Liability ends its duty to defend or pay **CLAIMS**, including payment of judgments, settlements and/or **DEFENSE COSTS**.

Subject to the Limits of Liability, the Company shall pay all reasonable **DEFENSE COSTS** incurred in connection with any **CLAIM** defended by the Company and brought against the **INSURED** alleging a **WRONGFUL ACT**.

## II. DEFINITIONS

**CLAIM** means:

  (a) a demand for monetary relief; or

  (b) a civil lawsuit or arbitration proceeding for monetary relief which is commenced by:

    i) service of a summons, complaint or similar pleading; or

    ii) receipt or filing of a notice of charges or demand for arbitration.

  (c) an event or circumstance which may reasonably be expected to give rise to a **CLAIM** against the **INSURED** for compensatory damages arising out of professional services and of which any **INSURED** has knowledge.

© 2004 The St. Paul Travelers Companies, Inc.
All Rights Reserved

# LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY

**DEFENSE COSTS means:**

    (a) reasonable and necessary fees and expenses of any lawyer designated by the Company;

    (b) costs taxed against the **INSURED** in any **CLAIM**;

    (c) interest accruing after the entry of any judgment, until the Company has paid, tendered or deposited in court the part of the judgment which does not exceed the Limit of Liability;

    (d) premiums on appeal bonds required in any **CLAIM** and/or premiums on bonds to release attachments for an amount which does not exceed the Limit of Liability, but without any obligation to apply for or furnish any such bonds; and

    (e) reasonable and necessary expenses, other than loss of earnings, incurred by the **INSURED** at the Company's request, provided the Company has previously authorized the expense in writing.

The **INSURED** shall not be responsible for salary charges of regular employees or officers of the Company, which costs shall not serve to reduce the Limit(s) of Liability.

**INSURED means:**

    (a) the **NAMED INSURED**;

    (b) any partner, director, officer, stockholder, employee of the **NAMED INSURED**, but only with respect to **WRONGFUL ACTS** rendered on behalf of the **NAMED INSURED**;

    (c) any former partner, officer, director, stockholder, or employee who has retired or otherwise ended their relationship with the **NAMED INSURED**, but solely in respect of **WRONGFUL ACTS** rendered on behalf of the **NAMED INSURED** prior to the date of retirement or end of the relationship;

    (d) the estate, heirs, executors, administrators, legal representatives and assigns of any **INSURED** in the event of such

**INSURED'S** death, incapacity, bankruptcy or insolvency, but only with respect to **WRONGFUL ACTS** committed or alleged to have been committed prior to the date of such **INSURED'S** death, incapacity, bankruptcy or insolvency and only to the extent the **INSURED** would otherwise be covered by this policy.

**NAMED INSURED** means the individual, partnership, corporation or other entity listed in the Declarations.

**POLICY PERIOD** means the period from the inception date of the policy to the expiration date as shown in the Declarations or any earlier termination date.

**WRONGFUL ACT** means any such actual or alleged act, error or omission or breach of duty in the rendering of or failure to render such professional services as are customarily rendered by:

    (a) a life or accident/health insurance agent or broker, for others for monetary compensation;

    (b) a property/casualty insurance agent or broker for others for monetary compensation, provided, however, that a premium charge is indicated in the Declarations for this coverage and such premium has been paid; or

    (c) a notary public.

**WRONGFUL ACT** also means false arrest, detention or imprisonment; wrongful entry or eviction; libel, slander or defamation, but specifically excluding advertising, broadcasting or telecasting activities; and invasion of privacy in rendering such professional services as described above.

**EXTENSIONS**

**SPOUSAL COVERAGE EXTENSION**

    It is agreed and understood that this policy shall cover loss arising from any **CLAIM** for asset conversion made against the lawful spouse of an **INSURED** of the Company for **CLAIMS** arising solely out of his or her capacity as the spouse of an **INSURED** including such **CLAIMS** that seek damages recoverable from marital community property, property jointly held by the **INSURED** and the spouse, or property transferred from the **INSURED**

© 2004 The St. Paul Travelers Companies, Inc.
All Rights Reserved

## LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY

to the spouse. This extension shall not afford coverage for any **CLAIM** for any actual or alleged **WRONGFUL ACT** of the spouse and this policy shall only apply to actual or alleged **WRONGFUL ACTS** of an **INSURED** subject to the policy's terms and conditions.

### CONFIDENTIALITY COVERAGE EXTENSION

Subject to all other terms and conditions, this policy covers damages resulting from the **INSURED'S** unintentional disclosure of confidential or proprietary information. This extension applies only if the **INSURED'S** disclosure of such information is made in conjunction with the **INSURED'S** performance of services.

### E-COMMERCE COVERAGE

Subject to all other terms and conditions, this policy applies to damages and claims expenses, subject to a $100,000 sub-limit which is included in and not in addition to the Limits of Liability set forth in the Declarations, which the **INSURED** becomes legally obligated to pay as a result of **CLAIMS** first made during the **POLICY PERIOD** arising from the **INSURED'S** conduct by E-commerce of the following professional services: solicitation, application processing and quoting. However, no coverage is provided for acts, errors or omissions arising from premium payment or collection, premium financing, website and weblink design, development, operation and/or maintenance.

### DISCIPLINARY PROCEEDINGS COVERAGE

The Company shall have neither the right nor the duty to defend any disciplinary proceeding. In the event the violation of disciplinary rules is not proven by a final and enforceable determination by a tribunal or competent jurisdiction adverse to the **INSURED** and is not admitted by the **INSURED**, then the Company shall reimburse the **INSURED** for all reasonable fees, costs and expenses incurred by the **INSURED** and no deductible will apply in connection with such disciplinary proceeding. In the event the violation of disciplinary rules or other professional misconduct alleged in any disciplinary proceeding is proven by a final and enforceable determination by a tribunal or

competent jurisdiction adverse to the **INSURED** but is not admitted by the **INSURED**, then the Company shall reimburse the **INSURED** for all reasonable fees, costs and expenses incurred by the **INSURED** in excess of the deductible set forth in the Declarations, subject to a limit of $10,000.

Whenever coverage under this policy would be excluded, suspended or lost:

1. based upon any exclusion relating to dishonest, criminal, fraudulent or intentional **WRONGFUL ACTS** by an **INSURED** and with respect to which any other **INSURED** did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof; or

2. based upon noncompliance with any condition relating to giving notice to the Company with respect to which any other **INSURED** shall be in default, solely because of the default or concealment of the default by any other **INSURED**.

the Company agrees that such insurance as would otherwise be afforded by this policy shall continue in effect and apply to any **INSURED** who did not personally commit or personally acquiesce in or remain passive after having personal knowledge of one or more of the acts or omissions giving rise to such exclusion or condition; provided, however, that if the condition be one with which the **INSURED** can comply, after receiving knowledge thereof, the **INSURED** entitled to the benefit of this waiver shall comply with such condition promptly after obtaining knowledge of the failure of any other **INSURED** to comply therewith.

### III EXCLUSIONS

This policy does not apply:

1. to any judgment or final adjudication based upon or arising out of any dishonest, fraudulent, criminal, malicious or deliberately wrongful acts or omissions committed by any **INSURED**, however, the Company will defend allegations of the foregoing acts or

## LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY

omissions until the time that the act or omission is factually proven;

2. to any **CLAIM** for bodily injury to, sickness, disease or death of any person, emotional distress, mental anguish, or damage to or destruction of any tangible property, including the loss of use thereof;

3. to any **CLAIM** by an **INSURED** under this policy against another **INSURED** hereunder, or arising out of or connected with the performance of or failure to perform services for any person or entity which:

   (a) is owned or controlled by any **INSURED**;

   (b) owns or controls any **INSURED**;

   (c) is affiliated with any **INSURED** through any common ownership or control; or

   (d) any **INSURED** is a director, officer, partner or principal stockholder;

4. to any **CLAIM** arising out of the rendering of or failing to render any services involving:

   (a) actuarial, accounting, legal or tax advice;

   (b) structured settlement annuities; life settlements; or viatical settlements;

   (c) promissory notes;

   (d) multiple employer welfare arrangements or multiple employer trusts, or any pension, welfare or other benefit plan, except those fully funded by insurance, reinsurance or any annuity(ies) issued by an insurance company which possessed an A.M. Best rating of "A–" or better at the time of placement;

5. to any **CLAIM** based upon, arising out of, due to or involving, directly or indirectly, the insolvency, receivership, bankruptcy, liquidation or financial inability to pay, of any insurance company in which the **INSURED** has placed or obtained any insurance or bond; however, this exclusion shall not apply to any **CLAIMS** arising from business placed with insurance companies which

possessed an A.M. Best rating of "A–" or better at the time of placement;

6. to any **CLAIM** involving any commingling of funds or accounts, or for sums received by any **INSURED** or credited to any **INSURED'S** account, or for fees, premiums, taxes, commissions or brokerage monies;

7. to any **CLAIM** arising out of any pension, profit sharing, welfare plan or other employee benefit plan in which any **INSURED**, or any firm in which any **INSURED** has a financial interest, is a participant, named fiduciary, designated fiduciary, administrator, plan sponsor or trustee as those terms are used in the Employee Retirement Income Security Act of 1974 (ERISA) and the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), including any amendments thereto, regulations or enabling statutes and any other similar federal, state, or provincial statute or regulation;

8. to any **CLAIM** directly or indirectly based upon or arising out of the actual or alleged violation of any federal, state or local civil rights law or statute pertaining to unfair labor practices, discrimination, sexual harassment, wrongful discipline or termination or a breach of an employment or agency contract, including any **CLAIM** of vicarious liability therefore;

9. to any **CLAIM** for anti-trust violations, restraint of trade, unfair competition or involving the unauthorized use of trade secrets, client lists or confidential or proprietary information;

10. to any **CLAIM** by any governmental or quasi-governmental regulatory agency or self-regulatory body;

11. to any **CLAIM** for nonpecuniary relief, or fines, penalties, or punitive, exemplary or multiplied damages; however, only where required by law, this policy shall cover, subject to all terms, conditions and exclusions contained in the policy, up to $5,000 in punitive, exemplary, or multiplied damages, as part of, and not in

**LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY**

addition to, the Limits of Liability otherwise afforded by the policy;

12. to any liability assumed by any **INSURED** under an oral or written contract, unless the **INSURED** would have been legally liable in the absence of such contract;

13. to any **CLAIM** arising out of or based upon the failure of any insurer, health maintenance organization ("HMO") or preferred provider organization ("PPO") to pay the salaries or fees of any practitioner or any **CLAIM** based upon or arising out of the quality of care rendered by or for alleged malpractice of a participating provider of service of any HMO or PPO;

14. to any **CLAIM** alleging, arising out of or based upon or attributable to the notarized certification or acknowledgment, or any guarantee of a signature without the physical appearance before the **INSURED** at the time of said notarization, acknowledgment or guarantee of the person who is or purports to be the person signing the document;

15. to any **CLAIM** arising out of written or oral warranties or guarantees as to the availability of funds, or specified rate of return and/or interest; and/or

16. to any **CLAIM** based upon or arising out of a violation or alleged violation of the Securities Act of 1933 as amended, or the Securities Exchange Act of 1934 as amended, or any state Blue Sky or securities law or similar state or federal statute and any regulation or order issued pursuant to any of the foregoing statutes, unless endorsed hereon.

## IV.  SPECIAL PROVISIONS

### 1. LIMITS OF LIABILITY AND DEDUCTIBLE

(a) The Limits of Liability stated in the Declarations as applicable to each **CLAIM** is the maximum the Company will pay for all amounts payable under the policy in settlement or satisfaction of judgments, awards and **DEFENSE COSTS** for any one **CLAIM**. The Limits of Liability for each **CLAIM** is excess over the deductible and applies regardless of the number of **INSUREDS, CLAIMS** or claimants. All **CLAIMS** arising out of the same **WRONGFUL ACT** or a series of continuous, repeated or interrelated **WRONGFUL ACTS,** whenever made, shall be considered first made at the time the earliest **CLAIM** was made and all such **CLAIMS** shall be subject to the same Limit of Liability.

(b) Subject to the foregoing, the Limit of Liability stated in the Declarations as aggregate is the maximum the Company will pay for all amounts payable under the policy in settlement or satisfaction of judgments, awards and **DEFENSE COSTS** for all **CLAIMS** first made during the **POLICY PERIOD** or the optional extended reporting period. The aggregate Limit of Liability for the extended reporting period shall be a part of, and not in addition to, the aggregate Limit of Liability for the **POLICY PERIOD**.

(c) The deductible amount stated in the Declarations applies to each **CLAIM**, and shall be paid by the **INSURED**. The deductible includes **DEFENSE COSTS** and amounts paid in settlement or satisfaction of judgments or awards for any covered **CLAIM**.

(d) **DEFENSE COSTS** and amounts paid in settlement or satisfaction of judgments or awards for **CLAIMS** are included within and subject to the Limits of Liability stated in the Declarations. All **DEFENSE COSTS** shall be subtracted first from the Limit of Liability, with the remainder, if any, being the amount available to pay damages.

### 2. REIMBURSEMENT OF THE COMPANY

If the Company, for any reason, pays any amount of a judgment, award or **DEFENSE COSTS** within the deductible or in excess of the Limits of Liability, the **INSURED** will reimburse the Company for such payment, within 30 days of the Company's request.

© 2004 The St. Paul Travelers Companies, Inc.
All Rights Reserved

**LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY**

3.  **LOSS PROVISIONS**

The **INSURED**, as a condition for coverage, shall give written notice to the Company, as soon as practicable during the **POLICY PERIOD** or any extended reporting period, of any **CLAIM** made against the **INSURED**. In the event the **INSURED** is served with a summons or a complaint, other legal process or a notice of charge or demand for arbitration, the **INSURED** shall immediately forward such process, notice or demand to the Company. Notice given by or on behalf of the **INSURED** to any authorized representative of the Company, with particulars sufficient to identify the **INSURED**, shall be deemed notice to the Company.

4.  **SPECIAL REPORTING CLAUSE**

If during the **POLICY PERIOD** or any extended reporting period, the **INSURED** first becomes aware of any **WRONGFUL ACT** which may reasonably be expected to give rise to a **CLAIM** against the **INSURED**, and the **INSURED** gives written notice to the Company during the **POLICY PERIOD** or the extended reporting period of the facts and circumstances surrounding the **WRONGFUL ACT**, including the dates and persons involved, then any **CLAIM** which is subsequently made against the **INSURED** arising out of such **WRONGFUL ACT** shall be treated as a **CLAIM** first made during the **POLICY PERIOD**.

5.  **OPTIONAL EXTENDED REPORTING PERIOD**

If the Company or the **NAMED INSURED** cancels or refuses to renew this policy for any reason other than nonpayment of premium, the **NAMED INSURED** has the right to purchase an extended reporting period, effective upon the date of cancellation or nonrenewal and running for either twelve (12) months, twenty-four (24) months or thirty-six (36) months to cover **CLAIMS** first made against the **INSURED** during the extended reporting period, but only for **WRONGFUL ACTS** committed during or prior to the **POLICY PERIOD** and otherwise covered by the policy.

To exercise this right the Company must receive written notice within 30 days of the effective date of cancellation or nonrenewal along with payment of an additional premium of 100% of the total annual premium for the 12-month extended reporting period, an additional premium of 150% of the total annual premium for the 24-month extended reporting period or 185% of the total annual premium for the 36-month extended reporting period.

The Limit of Liability of the policy at the time of cancellation or nonrenewal shall not be increased for any optional extended reporting period.

6.  **RETIREMENT, DEATH AND DISABILITY EXTENDED REPORTING PERIOD**

If the **NAMED INSURED** is a sole proprietorship, the **NAMED INSURED** shall be afforded an extended reporting period of sixty (60) months immediately following the end of the **POLICY PERIOD**, at no additional premium, provided:

1.  the **NAMED INSURED** dies during the **POLICY PERIOD**; or

2.  the **NAMED INSURED** has been continuously insured by the Company for at least five (5) years and the **NAMED INSURED** retires or otherwise voluntarily and permanently ceases the practice of acting as a life or health insurance agent or broker, or becomes permanently and totally disabled and ceases the practice of acting as a life or health insurance agent or broker.

**IT IS A CONDITION PRECEDENT** to this coverage that written proof of such death, retirement or disability must be furnished to the Company by the **NAMED INSURED** or his or her legal representative within sixty (60) days of the end of the **POLICY PERIOD**. In the event the **NAMED INSURED** is permanently and totally disabled, such **INSURED** agrees to submit to medical examination(s) by physician(s) designated by the Company.

**V. GENERAL CONDITIONS**

1.  **POLICY TERRITORY**

## LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY

The policy applies to **WRONGFUL ACTS** committed anywhere by the **INSURED**, provided a **CLAIM** is made against the **INSURED** for such **WRONGFUL ACTS** in the United States of America, its territories or possessions, the District of Columbia, Puerto Rico or Canada.

### 2. INSURED'S DUTIES

The **INSURED** shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits or proceedings, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **INSURED**. The **INSURED** shall attend hearings, trials and depositions and shall assist in securing and giving evidence and obtaining the attendance of witnesses, all without cost to the Company unless otherwise agreed in writing. The **INSURED** shall not, except at their own cost, voluntarily make any payment, admit any liability, assume any obligation, or incur any expense without the written consent of the Company.

### 3. ACTION AGAINST THE COMPANY

No action shall lie against the Company, unless, as a condition prior to such action, there shall have been full compliance with all the terms of this policy and the full amount of the **INSURED'S** obligation to pay shall have been finally determined either by judgment against the **INSURED** after actual trial or by written agreement of the **INSURED**, the claimant and the Company. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the **INSURED** to determine the **INSURED'S** liability, nor may the Company be impleaded into such action by the **INSURED** or the **INSURED'S** legal representative.

### 4. ARBITRATION

Any dispute between the **INSURED** and the Company concerning the terms and conditions of this policy shall be

resolved by binding arbitration in accordance with the rules then in effect of the American Arbitration Association. The **INSURED** and the Company shall each bear their own costs of the arbitration and shall share equally the costs of the arbitrator.

### 5. SUBROGATION

In the event of any payment under this policy, the Company shall be subrogated to all the **INSURED'S** rights of recovery. The **INSURED** shall do everything necessary to secure such rights. The **INSURED** shall do nothing to prejudice such rights. Any amounts recovered in excess of the Company's total payments under this policy shall be reimbursed to the **INSURED** less the cost to the Company of such recovery.

### 6. OTHER INSURANCE

Such insurance as provided by this policy shall apply only as excess over any other valid and collectible insurance available to the **INSURED**, as well as any indemnification which the **INSURED** has actually received from any customer or client. With respect to customer or client indemnification which is not paid by such indemnitor, this policy shall pay such damages as are otherwise covered under this policy, however, the **INSURED** agrees, as a condition for such payment, to provide whatever assistance and cooperation is required by the Company to enforce the Company's rights as subrogee.

### 7. CANCELLATION

This policy may be cancelled by the **NAMED INSURED** by surrender of this policy to the Company or by giving written notice to the Company stating when cancellation shall be effective, but not before the date of the request. This policy may also be cancelled by the Company by mailing to the **NAMED INSURED**, by registered, certified or other first class mail, at the **NAMED INSURED'S** address shown in the Declarations, written notice stating when, not less than 30 days thereafter (not less than 10 days thereafter in the event of nonpayment of premium), the cancellation shall be effective. The mailing of such notice shall be sufficient proof of notice and this policy shall terminate at the date and

IA006 Ed. 9-04
Printed in U.S.A.

© 2004 The St. Paul Travelers Companies, Inc.
All Rights Reserved

**LIFE AND HEALTH INSURANCE AGENTS AND BROKERS PROFESSIONAL LIABILITY**

hour specified in such notice. If the policy is cancelled by the **NAMED INSURED**, the Company will retain the customary short rate proportion of the earned policy premium. If this policy is cancelled by the Company, the Company shall retain the pro rata proportion of the earned policy premium. Payment or tender of any unearned premium by the Company shall not be a condition of cancellation, but such payment shall be made as soon as practicable.

### 8. ASSIGNMENT OF INTEREST

The **INSURED** must obtain the Company's prior written consent to transfer or assign any rights under this policy.

### 9. CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this policy, nor estop the Company from asserting any right under this policy. The terms of this policy shall not be waived or changed, except by endorsement issued to form a part of this policy and

signed by an authorized representative of the Company.

### 10. TERMS OF POLICY CONFORM TO STATUTE

The terms of this policy which are in conflict with the statutes of the state in which the policy is issued are hereby amended to conform to such statutes.

### 11. INSPECTION OF RECORDS

The Company has the right to inspect the books and records of the **INSURED** at any time during the **INSURED'S** regular business hours.

### 12. NAMED INSURED AS SOLE AGENT

The **NAMED INSURED** listed in the Declarations shall be the sole agent of all **INSUREDS** under the policy for the purpose of effecting or accepting any amendments to or cancellation of this policy, for the payment of premium and the receipt of any return premium that may become due under this policy; and the exercising or declining to exercise any right to an extended reporting period.

© 2004 The St. Paul Travelers Companies, Inc.
All Rights Reserved